IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **LARRY SYNCLAIR, SR,** | ) | **1:01-CV-6546 AWI DLB** |
| | ) | |
| **Plaintiff**, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER GRANTING DEFENDANTS'** |
| **v.** | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT AND DIRECTING THE** |
| **COUNTY OF FRESNO,** | ) | **CLERK OF THE COURT TO ENTER** |
| **DEPARTMENT OF CHILD** | ) | **JUDGMENT FOR DEFENDANTS** |
| **ABDUCTION UNIT, WILLIAM** | ) | |
| **FRANK, RON HOPPER, DENNIS** | ) | (Document #145) |
| **LEWIS, AND EDWARD HUNT,** | ) | |
| | ) | |
| **Defendants**. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Larry Synclair, Sr. is pursuing this civil action for damages and injunctive relief pursuant to 42 U.S.C. § 1983.  This court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and venue is proper in this district.  Pending before the court is Defendants' motion for summary judgment.


**PROCEDURAL BACKGROUND**

This action is proceeding on Plaintiff's March 13, 2002 amended complaint.  Plaintiff seeks damages and injunctive relief pursuant to 42 U.S.C. § 1983 for Defendants' alleged violations of Plaintiff's right to procedural due process, substantive due process, and rights under the Fourth Amendment.  Plaintiff contends that Defendants failed to take steps to follow and implement the Fresno County Superior Court's orders that required Defendants to cooperate with federal officials in connection with the international parental abduction of Plaintiff's son.

Plaintiff also contends that Defendants failed to establish policies and procedures to ensure that its employees and agents would follow the Superior Court's orders.

On July 30, 2003, the court dismissed this action for lack of subject matter jurisdiction. The court reasoned that because resolving Plaintiff's claim would require the court to determine the validity of the Superior Court's orders, this action was barred by the Rooker-Feldman doctrine.

Plaintiff appealed.   On December 14, 2004, the Ninth Circuit affirmed the court's dismissal.   See Synclair v. County of Fresno, 115 Fed.Appx. 395 (9th Cir. 2004).

On November 28, 2005, the Supreme Court vacated the judgment.   The Supreme Court remanded the case to the Ninth Circuit for further consideration in light of Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S.Ct. 1517 (2005).   See Synclair v. Fresno County, Cal., 546 U.S. 1027  (2005).  On June 2, 2006, the Ninth Circuit remanded the action to this court for further proceedings consistent with the direction of the Supreme Court.   See Synclair v. County of Fresno, 449 F.3d 1041 (9th Cir. 2006).

On October 24, 2008, Defendants filed a motion for summary judgment.   Defendants contend, among other things, that there are insufficient facts to support a Fourteenth Amendment claim.   On November 7, 2008, Plaintiff filed an opposition.   On November 17, 2008, Defendants filed a reply.

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962);  Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir 2003).

> Under summary judgment practice, the moving party
> [A]lways bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006).  A fact is material if it could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Miller, 454 F.3d at 987.  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.; Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. 477 U.S. at 322; Miller, 454 F.3d at 987.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. 477 U.S. at 322.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,210 F.3d 1099, 1103 (9th Cir. 2000).   The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir.2008) (quoting Fed. R. Civ. Pro. 56(e)); Miller, 454 F.3d at 987.

3

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255; Miller, 454 F.3d at 987; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

Additionally, the court has the discretion in appropriate circumstances to consider

4

materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

## UNDISPUTED FACTS[1]

Plaintiff moved to live in Russia in 1991 where he lived for approximately nine years. On June 4, 1994, Plaintiff and Svetlana Synclair ("Svetlana") were married in Russia. On May 14, 1995, Svetlana gave birth to their son, Larry Synclair, Jr. ("Larry Jr."), who was born in Fresno, California.  Soon after Larry Jr.'s birth, the three returned to Russia.

In May of 1998, Svetlana and Plaintiff separated, with Larry Jr. primarily staying with his mother.  That same year, Plaintiff, through his Russian attorney, filed for divorce in the Dorogomilovo District Court of Moscow.  Plaintiff is not sure whether his dissolution proceedings included child custody or support because it occurred in the Russian language and Plaintiff's Russian attorney filed the paperwork.

In November of 1998, Plaintiff and Svetlana entered into an agreement that Plaintiff could have visitation with his son every weekend on the condition that he pay $300/month for child support to Svetlana.  Plaintiff describes this agreement as "extortion."

Plaintiff promised Svetlana that he would never remove their child from the country of Russia.

---

[1]  These facts or deemed undisputed for the purposes of this motion only.   Although some court orders and transcripts may not have been timely authenticated, the court will consider all submitted court orders and transcripts because the parties do not deny they were issued and they are not being considered for the truth of the matters asserted, i.e. whether the order is correct.  The court has also considered the additional facts provided by Plaintiff despite his failure to file a statement of disputed facts as required by Local Rule 56-260(b).  Finally, it is unnecessary to settle may of the parties' factual disputes because this action is being resolved on the basis of whether Plaintiff has a due process right in the enforcement of court orders.

1  After picking up his son and without informing Svetlana, Plaintiff took a train out of

2  Moscow into Minsk, Belarus, where he and his son boarded an airplane and flew into London.

3  Plaintiff was unable to fly out of Moscow, Russia, as this would have required Svetlana's

4  signature of consent.   From London, Plaintiff and Larry Jr. flew into San Francisco, California.

5  A month after fleeing with his son from Russia, on February 8, 1999, Plaintiff filed a

6  petition for legal separation in the Fresno County Superior Court, case number 626188-7.

7  Meanwhile in Russia, on March 10, 1999, the head of the District Management Office for

8  the Dorogomilovo District of Moscow recommended to the Russian Court that Svetlana be given

9  permanent custody of Larry Jr., based on the best interests of the child.  On March 22, 1999, the

10  head of the Moscow Social Development Department prepared a home study on Svetlana's and

11  Larry Jr.'s living conditions.

12  Back in Fresno, on April 6, 1999, at a hearing on a motion to dismiss for lack of

13  jurisdiction brought by Svetlana's family law attorney, John Johnson, the Superior Court ruled

14  that Russia was the home state of Plaintiff's son. Svetlana came from Russia to attend this

15  hearing and remained from mid to late March until a few days after the hearing. During the

16  proceeding, Fresno County Superior Court Judge Jane Cardoza ("Judge Cardoza") found that,

17  under then Family Code Section 3403 (Uniform Child Custody Jurisdictional Act), "California is

18  not the home state of this child since the child resided in the country of Russia for most of its life

19  and has only until recently been brought to the United States."  Judge Cardoza also ruled that,

20  "based on the fact that the child has resided in Russia for the majority of his life, . . . [it] appears

21  to the court that it would be in the child's best interest that the Russian court have jurisdiction

22  and consider the evidence that's before that court concerning the child."  Upon review of the

23  evidence, Judge Cardoza further found that the child had not been mistreated, abused or

24  neglected by his mother.  Judge Cardoza concluded by granting the mother's motion to dismiss.

25  The court found: "Accordingly, the court will grant the motion to dismiss this action finding that

26  it is the country of Russia, specifically Moscow, that would have jurisdiction in this matter."

27

28                                                    6

1   Plaintiff was ordered to return Larry Jr. to his mother that same day.

2         At no time while in Russia did Plaintiff ever report the alleged abuse to the Russian
3   authorities.

4         Instead of returning the child, Plaintiff filed a writ of mandate and sought a stay of Judge
5   Cardoza's Order.  A stay of Judge Cardoza's order was immediately granted by the California
6   Fifth District Court of Appeals.

7         Svetlana returned to Russia to tend to business without her son.

8         The Court of Appeals ultimately denied Plaintiff's writ/appeal.

9         Svetlana informed Plaintiff that she would be returning to Fresno to pick up Larry Jr. in
10  the first week of June, 1999.

11        Upon her arrival in Fresno, Svetlana went to Plaintiff's mother's house where he was
12  staying.  No one was there at the times Svetlana went to the house.

13        After two days of looking for Plaintiff and Larry Jr. in Fresno, Svetlana filed a police
14  report for possible child concealment and opened up a child abduction case against Plaintiff.

15        Plaintiff contends that he went to San Diego the third week of June to look for a job and
16  was only planning on staying a week.

17        On June 24, 1999, District Attorney Investigator John Swenning signed a declaration in
18  support of an arrest warrant for Plaintiff, which Judge Cardoza signed.

19        Plaintiff did not contact the authorities in Fresno.   Instead of returning to Fresno with his
20  child and while there was still an active warrant for his arrest, Plaintiff extended his stay in
21  Southern California, retained an attorney, and on July 15, 1999, he filed a federal civil action
22  against Judge Cardoza and other named defendants for an injunction and declaratory relief in the
23  Central District of California, Case No. 99-07250 SVW.

24        On July 16, 1999, Judge Cardoza issued an order to locate and return the child.

25        Thereafter, on July 19, 1999, Plaintiff through the two attorneys representing him at that
26  time, filed a motion to disqualify Judge Cardoza and each and every judge of the Fresno Family

27

28                                          7

1   Court.

2   On July 27, 1999, Judge Cardoza explained her ruling in her answer to Plaintiff's Motion

3   to Disqualify her from further hearing the case.

4   On July 20, 1999, the Dorogomilovo District Court issued notice to Plaintiff of a child

5   custody hearing scheduled for August 4, 1999.  If he failed to appear at the hearing, custody was

6   going to be decided without him present.

7   On September 2, 1999, Judge Cardoza adopted the recommendations of Fresno County

8   Family Court Mediator Yoshi Asanuma, granting Svetlana primary custody of Larry Jr., and

9   visitation to Plaintiff.  Specifically, Plaintiff was granted visitation every summer from June 15

10  through August 15; and if he traveled to Russia with at least one month's written notice, he shall

11  have no more than three consecutive months with alternating weekends to Svetlana.  Further,

12  when the child is with Plaintiff in the United States, he "shall purchase the total cost of the

13  round-trip ticket and send written confirmation of the total cost and the flight schedule to the

14  mother within 10 days after he purchased the ticket; and the mother shall reimburse Plaintiff for

15  the cost of the round-trip ticket within 10 days after receiving confirmation."   At the hearing,

16  Judge Cardoza stated:

17          This order will continue to be the order of the Court concerning Custody
            and visitation of Larry Jr., until there is a further order by a court in Moscow.
18          The court will not defer jurisdiction because today this Court is only
            making this order because it comes to the Court and the Court has previously
19          made the jurisdictional determination that this will be the order of the Court until
            this Court receives further paperwork which would show the Court that, in fact,
20          the court in Russia has made an order concerning custody and visitation.   The
            court will not defer jurisdiction until that order and a certified copy of that order
21          has been presented to this Court.

22  Plaintiff moved to San Diego around January 2000.

23  John Johnson filed the Russian Foreign Court Order with the Court on July 25, 2000.

24  Efforts by the Defendants to obtain a certified copy of the order through the United States State

25  Department and Embassy in Russia were unsuccessful.  Also unsuccessful were their attempts to

26  discuss the case with Plaintiff's attorney in Russia.

27

28                                          8

On February 12, 2000, while in Moscow for the Court proceeding, Plaintiff went to visit his son.  Svetlana prevented Plaintiff from visiting with his son unless he turned over his passport and airline ticket.

On April 3, 2000, Bradford Johnson, Chief of American Citizen Services, United States Embassy, Moscow, sent a diplomatic note (CON 2000 - 017) to the Russian Ministry of Foreign Affairs in reference to "a Russian court decision granting full custody of Larry to his mother, Mrs. Svetlana Victorovna Synclair, in the absence of a finalized divorce decree."  The note requested assistance in arranging a visit between Larry Jr. and embassy staff.

On or about June 16, 2000, Plaintiff filed a petition in Fresno Superior Court for an order to show cause for modification of child custody.

On July 2, 2000, Plaintiff signed a stipulation to designate Commissioner Nancy Cisneros as a temporary judge to preside over the case.  Svetlana did not sign the stipulation.

On or about July 13, 2000, Fresno County dismissed the criminal charges against Plaintiff for child abduction.

Around July 2000, alleging that he had been denied court ordered visitation, Plaintiff requested the Child Abduction Unit file criminal charges against Svetlana.  Plaintiff's request was denied.  Defendant Frank told Plaintiff by letter dated July 21, 2000 that:  "At this time because of jurisdictional questions and insufficiency of evidence, this office will not criminally prosecute Svetlana Synclair, nor will we proceed with a civil contempt.  We will monitor the case and attempt to investigate further to ascertain the status of the Russian custody order."

Defendants William Frank and Dennis Lewis made several efforts to obtain a certified copy of the Russian Order but were unsuccessful.

On November 2, 2000, a hearing was held in Fresno Superior Court on Plaintiff's motion for order to show cause.   Svetlana was not present.

At the November 2, 2000 hearing, Judge Nancy Cisneros found that Fresno County had jurisdiction because a certified copy from Russia had not been received.  Judge Cisneros

9

modified the child custody order by granting Plaintiff an additional four weeks visitation to

include the Christmas Holiday as permitted by flight schedules.  In the written Order, which was

prepared by Plaintiff's family law attorney, Jerry Shapiro, Judge Cisneros ruled that, "all prior

orders of the court to remain in full force and effect."  Further, the District Attorney's Office was

ordered to "take all steps necessary to assist various government agencies both in the U.S. and in

Russia to carry out compliance with this order."

At the November 2, 2000 hearing, Defendant William Frank stated:

> I'm asking this court to allow the Child Abduction Unit, acting as
> attorneys for the court, to take whatever steps are necessary to ensure [Plaintiff's]
> rights to visitation with his child.   And, I would point out, and it's been ably
> pointed out by all sides, this child is an American citizen.   He was born in the
> United States, and the United States has an obligation to protect him, as well as
> [Plaintiff's] rights, and those rights include visitation with his father.   We do try
> to maintain neutrality, and that's why I'm in the case, whether or not me or Ms.
> Howe, and that's why I believe there has been violations of [Plaintiff's] rights.

On April 9, 2001, Plaintiff sent a letter to Ron Hopper at the District Attorney's Office

inquiring into any efforts to investigate.  Plaintiff wrote: "I expect, according to the law, the DA

proceed with contacting the FBI about the illegal action of my son's abduction and allow them to

communicate with their international counterparts."

In response to the April 9, 2001 letter, on April 13, 2001, Defendant Dennis Lewis wrote:

"I believe the only proper action for this office would be to ask the Fresno County Superior Court

to vacate all orders subsequent to the finding that Russia is the home state of Larry Syclair, Jr. . .

. Simply put, this office cannot enforce an invalid order.   Further, we cannot make any demands

upon the Russian executive or judicial systems to enforce these invalid orders."

Thereafter, in 2001, Plaintiff sought assistance from the San Diego Child Abduction Unit.

Plaintiff was living in San Diego by this time.  In response, on or about September 20, 2001,

Plaintiff received correspondence from Gary Haehnle, Supervising Deputy District Attorney of

the San Diego Child Abduction Unit, stating: "After discussing your case with Fresno County

Deputy District Attorney Dennis LEWIS, we will not be accepting your case for the issuance of a

10

1  criminal warrant.  It is my understanding that a Fresno Superior Court Judge had ruled that
2  Republic of Russia is the homestate of the child and thus had jurisdiction for the determination of
3  custody of your son.   That order, unless overturned by an Appellate Court, is enforceable
4  throughout the State of California."

5       On or about October 9, 2001, Plaintiff filed a change of venue from Fresno County of San
6  Diego County.  Plaintiff's motion for change of venue was granted and since the beginning of
7  2002, venue for the case has been San Diego County.  On December 20, 2002, San Diego
8  Superior Court Judge Jeffrey Barton found that the Court had jurisdiction to make and enforce
9  custody and visitation orders in the matter pursuant to Family Code Section 3421.  The court
10  confirmed the order issued by the Fresno Superior Court and modified it giving Plaintiff sole
11  legal and sole physical custody of his son, Larry Jr.

12       Plaintiff concedes that he erred in claiming a Fourth Amendment violation allegation.

13       As of the time of taking Plaintiff's deposition on February 19, 2008, Plaintiff had still not
14  seen his son, some 8 years later.

15       Plaintiff concedes that the District Attorney's Office did not represent him as an attorney.

16

17                              **DISCUSSION**

18       The Civil Rights Act, 42 U.S.C. § 1983, provides a cause of action against any person
19  who, under color of state law, deprives another of any rights, privileges or immunities secured by
20  the Constitution and laws of the United States. 42 U.S.C. § 1983.   The first inquiry in any action
21  brought pursuant to 42 U.S.C. § 1983 is whether the plaintiff has been deprived of a right secured
22  by the Constitution and laws.  Baker v. McCollan, 443 U.S. 137, 140 (1979); Allen v. City of
23  Portland, 73 F.3d 232, 235 (9th Cir. 1995).  Plaintiff contends that this Fourteenth Amendment
24  rights to due process have been violated.

25  //

26

27

28                              11

**A. Fourteenth Amendment Due Process Violation**

Both the procedural and substantive components of the Due Process Clause require that there to be a liberty or property interest at stake for the Due Process Clause's protections to be invoked.   As such, in order to prove a violation of procedural due process, a plaintiff must show a deprivation of a cognizable liberty or property interest protected by the Constitution.   Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 902 (9th Cir. 2007).   Similarly, substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987) (quoting, respectively, Rochin v. California, 342 U.S. 165, 172 (1952), and Palko v. Connecticut, 302 U.S. 319, 325-26 (1937)); Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir.1998).   Thus, to succeed on Plaintiff's Fourteenth Amendment claim, Plaintiff must first establish facts showing a property or liberty interest.

Plaintiff alleges that he was denied due process when Defendants failed to carry out the Fresno County Superior Court's orders and the California Family Code.   Defendants contend that Plaintiff has offered no facts to support a Fourteenth Amendment claim.   Thus, the first issue that must be resolved in this motion for summary judgment is whether Plaintiff in fact has a property or liberty interest in Defendants carrying out the Superior Court's orders and the California Family Code.

In general, the Due Process Clauses does not confer an affirmative right to governmental aid to protect an individual's rights, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.  DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 196 (1989); Johnson v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007). "If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them."

1  DeShaney, 489 U.S. at 196-97.  In addition, the Due Process Clause is not implicated by an

2  official's negligent act that results in unintended loss of or injury to life, liberty, or property.

3  Daniels v. Williams, 474 U.S. 327, 328 (1986); Alfrey v. U.S., 276 F.3d 557, 568 (2002).

4       In 2005, the Supreme Court found that there is no property interest for purposes of the

5  Due Process Clause in police enforcement of a court order.  In Town of Castle Rock, Colorado v.

6  Gonzales, 545 U.S. 748 (2005), the plaintiff obtained a restraining order on behalf of herself and

7  her three daughters against her estranged husband.  Id. at 751.   The preprinted text on the back of

8  the form included a notice to law enforcement that stated law enforcement "SHALL" use every

9  reasonable means to enforce the restraining order, including arresting the estranged husband or

10 seeking a warrant when law enforcement had information amounting to probable cause that the

11 restraining order had been violated.  Id. at 752.   The plaintiff's estranged husband took her three

12 daughters in violation of the restraining order.  Id. at 753.  Over the course of the evening,

13 Plaintiff contacted the police numerous times, showed them a copy of the order, requested that it

14 be enforced, and asked the officers to find her three children.   Id. at 753-54.   The police told

15 Plaintiff to wait until later in the evening and did not make a reasonable effort to enforce the

16 court order.   Id.  "At approximately 3:20 a.m., [the plaintiff's estranged] husband arrived at the

17 police station and opened fire with a semiautomatic handgun he had purchased earlier that

18 evening.  Police shot back, killing him.   Inside the cab of his pickup truck, they found the bodies

19 of all three daughters, whom he had already murdered."  Id. at 754.

20      The plaintiff filed a complaint in federal court pursuant to 42 U.S.C. § 1983 in which she

21 alleged that the town of Castle Rock, Colorado, ("the Town") violated the Due Process Clause of

22 the Fourteenth Amendment when its police officers, acting pursuant to official policy or custom,

23 failed to respond properly to her repeated reports that her estranged husband was violating the

24 terms of a restraining order.  Castle Rock, 545 U.S. at 751 & 754.  The district court dismissed

25 the complaint on the ground that it failed to state a claim.   The plaintiff appealed and the Tenth

26 Circuit reversed the district court on the procedural due process claim but agreed there was no

27

28                                              13

substantive due process claim.   The Tenth Circuit found that the plaintiff had a protected property interest in the enforcement of her restraining order's terms and that the Town had deprived her of procedural due process because the police did not protect her property interests in the restraining order.  Id. at 754-55.   The case then reached the Supreme Court.

The Supreme Court considered whether the plaintiff had a property interest in police enforcement of the restraining order and whether the Town deprived her of this property without due process by having a policy that tolerated non-enforcement of court orders.  Castle Rock, 545 U.S. at 755.  The Supreme Court stated that the "procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit'".  Id. at 756.   To have a property interest, a person clearly must have more than an abstract need, desire, or expectation. She must, "'instead, have a legitimate claim of entitlement to it.'" Id. at 756 (quoting Roth, 408 U.S. at 577).   The Supreme Court recognized that such entitlements are not created by the Constitution, but "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Castle Rock, 545 U.S. at 756 (quoting Paul v. Davis, 424 U.S. 693, 709 (1976) and Roth, 408 U.S. at 577).

The Supreme Court reviewed the court order, which included language that dictated the officers "shall use every reasonable means to enforce a restraining order" and Colorado law, in which the legislature made clear its intent to have restraining orders enforced.  Castle Rock, 545 U.S. at 759-60.   Recognizing a well established tradition of police discretion, the Supreme Court found that a true mandate for action would require stronger language than "shall use every reasonable means."  Id. at 160-61.  The Supreme Court found: "Such indeterminacy is not the hallmark of a duty that is mandatory. Nor can someone be safely deemed 'entitled' to something when the identity of the alleged entitlement is vague." Id. at 763.   The Supreme Court then held that even if the Colorado laws and court order created an entitlement to enforcement of the court order, that entitlement would not constitute a property interest for purposes of the Due Process Clause.  Id. at 766 & 768.  The Supreme Court reasoned:

14

> Such a right [to enforcement of the court order] would not, of course, resemble any traditional conception of property. Although that alone does not disqualify it from due process protection, as *Roth* and its progeny show, the right to have a restraining order enforced does not "have some ascertainable monetary value," as even our "*Roth*-type property-as-entitlement" cases have implicitly required. Perhaps most radically, the alleged property interest here arises incidentally, not out of some new species of government benefit or service, but out of a function that government actors have always performed-to wit, arresting people who they have probable cause to believe have committed a criminal offense.

Id. at 766-67 (internal citations omitted).  The Supreme Court concluded that: "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."   Id. at 768.   This result reflects the Supreme Court's "continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law'".   Id. at 768 (*quoting* Parratt v. Taylor, 451 U.S. 527, 544 (1981) and Paul v. Davis, 424 U.S. 693, 701 (1976)).

Plaintiff relies both on the Fresno County Superior Court's orders as well as two California statutes to support his position that he had a property or liberty interest in Defendants following the Superior Court's orders.   The November 3, 2000 order stated: "The District Attorney of Fresno County, Child Abduction Unit, shall take all steps necessary to assist various government agencies, both in the United States and the Russian Federation, to carry out compliance with this order."   In addition, California Family Code Section 3131 provides:

> If a custody or visitation order has been entered by a court of competent jurisdiction and the child is taken or detained by another person in violation of the order, the district attorney shall take all actions necessary to locate and return the child and the person who violated the order and to assist in the enforcement of the custody or visitation order or other order of the court by use of an appropriate civil or criminal proceeding.

Cal.Fam.Code § 3131.   Finally, the district attorney shall take all actions necessary to locate the party and the child and to procure compliance with the order to appear for purposes of adjudication of custody.  Cal.Fam.Code § 3130.

The court finds that Castle Rock is dispositive of this action.   Even if Plaintiff has an entitlement to Defendants' enforcement of the court orders, that right does not constitute a

1  property or liberty interest protected by procedural due process.   The language of the court's

2  order and the Family Code at issue in this action is similar to that in Castle Rock.   In this case,

3  Defendants, pursuant to the court's order, were to "take all steps necessary to assist various

4  government agencies . . . to carry out compliance with this order".   Family Code Section 3131

5  also required that Defendants "shall take all actions necessary to locate and return the child".

6  However, in Castle Rock, the court found that a "true mandate" for action, that would create a

7  property interest, would require stronger language than "shall use every reasonable means to

8  enforce a restraining order."   Castle Rock, 545 U.S. at 761.   The court cannot find any practical

9  difference between the language of the order and Family Code in this case and the order and

10  statute at issue in Castle Rock.   Both orders and statutes mandate that the state actors do

11  "something" to enforce the order with little to no guidance on what the state actor is to do.   In

12  fact, the order in Castle Rock was far more specific than the order at issue in this case.   In Castle

13  Rock, the order provided instructions on when to arrest the violator if the order was violated.   Id.

14  at 758-59.   Here, neither the order nor any statute cited by Plaintiffs provides what necessary

15  steps Defendants were required to make.

16         The ambiguity of the alleged "entitlement" claimed by Plaintiff also provides a reason

17  against extending due process protections.   Plaintiff fails to provide facts showing what

18  Defendants were required to do by the Superior Court's orders and Family Code.   At best,

19  Plaintiff has alleged only a generalized wrongdoing.   As the court understands it, the court order

20  and Family Code required Defendants to call or otherwise contact someone at the FBI or some

21  other United States Government Agency and request some type of help in enforcing the order and

22  then Defendants and/or a United States Government Official would have contacted someone in

23  the Russian Federation who would have then somehow ensured that the District Management

24  Office for the Dorogomilovo District of Moscow, the Russian Court, or some other Russian

25  agency required Svetlana to comply with the Superior Court's order.   Such unclear and

26  convoluted steps cannot serve as a property interest, which is necessary for due process

27

28                                        16

1   protection.   As in <u>Castle Rock</u>   "[s]uch indeterminacy is not the hallmark of a duty that is

2   mandatory.   Nor can someone be safely deemed 'entitled' to something when the identity of the

3   alleged entitlement is vague." <u>Castle Rock</u>, 545 U.S. at 763.

4          As was the case in <u>Castle Rock</u>, Plaintiff cites nothing showing that the California

5   legislature or judiciary affirmatively indicated that the statutes at issue confer an entitlement or

6   property interest on parents who are denied visitation.    In <u>Castle Rock</u>, the Supreme Court noted

7   that the Colorado legislature would likely have given some indication of an intent to grant a

8   statutory entitlement if one were so intended.   <u>Castle Rock</u>, 545 U.S. at 765.   Similarly, the

9   California legislature gave no such indication here.   Thus, it does not appear California intended

10  to grant such an entitlement when enacting Family Code Section 3131.

11         The court recognizes that the state actors who were required to act in <u>Castle Rock</u> and its

12  progeny were police or peace officers and the state actors at issue in this action were Fresno

13  County Assistant District Attorneys.   The court also recognizes that part of the Supreme Court's

14  reasoning in <u>Castle Rock</u> was based on the well established tradition of allowing police

15  discretion.   <u>See</u> <u>Castle Rock</u>, 545 U.S. at 760-61.   However, as pointed out repeatedly by

16  Plaintiff, and previously found by the court, Defendants were not acting in their customary role

17  as prosecutors when they committed the allegedly improper conduct.   At the time, Defendants

18  were not representing any party.   Based on the undisputed facts, Defendants were acting in their

19  administrative capacity of enforcing court orders.   California Family Code Section 3132 states

20  that when "performing the functions described in Sections 3130 and 3131, the district attorney

21  shall act on behalf of the court and shall not represent any party to the custody proceedings." Cal.

22  Fam. Code § 3132.   The district attorney's function in assisting in the enforcement of child

23  custody orders is too close to that of a peace officer for the reasoning of <u>Castle Rock</u> not to apply.

24         Finally, the court notes that in his opposition brief Plaintiff has pointed to Defendants'

25  deposition testimony for the proposition that Defendants' non-compliance with the court orders

26  violated his Constitutional rights.   Plaintiff cites to deposition testimony in which some of the

27

28                                                   17

1   individual Defendants stated that they knew they had an obligation to follow the Superior Court's

2   orders and that the judge makes and interprets the law.   Plaintiff also cites to Defendants'

3   admission at their depositions that Plaintiff and his son have rights protected by the Constitution.

4   Plaintiff appears to take these admissions as proof that Plaintiff had a property interest in having

5   the court's orders complied with.   It is unnecessary to resolve whether any Defendant has

6   admitted wrongdoing or conceded Plaintiff's constitutional rights were violated.   Even if

7   Defendants conceded they violated Plaintiff's procedural due process rights, summary judgment

8   is still appropriate.   A property interest protected by the Due Process Clause is not created by a

9   state actor's belief the property right exists.   Rather, property interests are created and defined by

10  independent sources, such as state law. Castle Rock, 545 U.S. at 756;  Roth, 408 U.S. at 577.

11  Defendants' alleged concession of a property interest does not create one, and Castle Rock

12  disposes of Plaintiff's claim to a property interest in compliance with the court's orders.

13          Both Plaintiff's procedural due process claim and substantive due process claim require a

14  property or liberty interest before the Due Process Clause's protections are implicated.   For the

15  reasons discussed above, Castle Rock forecloses this court from finding that Plaintiff had a

16  property or liberty interest in Defendants taking actions to enforce the court order.   Without a

17  property or liberty interest, Plaintiffs' Due Process Clause claims fail.   Thus, summary judgment

18  is appropriate on Plaintiff's Due Process Clause claims brought under both procedural due

19  process and substantive due process.

20  **B.  Fourth Amendment**

21          Defendants also request summary judgment on Plaintiff's Fourth Amendment claim.

22  Plaintiff concedes that no Fourth Amendment claim is available.   Thus, summary judgment is

23  appropriate on any Fourth Amendment claim.

24  //

25

26

27

28                                                 18

**ORDER**

Accordingly, for the reasons discussed in this memorandum opinion, the court ORDERS that:

    1.      Defendants' motion for summary judgment is GRANTED;

    2.      The pretrial conference and trial dates are HEREBY VACATED; and

    3.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendants.

IT IS SO ORDERED.

**Dated:**   **January 16, 2009**                    **/s/ Anthony W. Ishii**
                                                                    CHIEF UNITED STATES DISTRICT JUDGE

19